IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:
                                                                                  BK 07-71949-CMS-13

SAMUEL BARNES
CHRISTINA BARNES

        DEBTORS

                                                                                   AP 08-70016-CMS

CHRISTINA BARNES

       PLAINTIFF
VS

FGL CLEARWATER, INC.
D/B/A AMERICAN DEBT ARBITRATION;
NATIONWIDE ASSET SERVICES, INC.
A/K/A NATIONWIDE ASSET SERVICES

       DEFENDANTS

### MEMORANDUM OF DECISION

This matter came before the court on June 24, 2008 for hearing on FGL Clearwater, Inc. d/b/a American Debt Arbitration ("FGL Clearwater") and Nationwide Asset Services. Inc. a/k/a Nationwide Asset Services' ("Nationwide Asset Services") (collectively "the Defendants") Motion to Dismiss and/or to Transfer Venue to the United States District Court for the Middle District of Tampa ("Motion"). Jesse S. Vogtle, Jr. appeared on behalf of the Defendants; R. Brent Irby appeared on behalf of Christina Barnes ("Plaintiff"). The court **GRANTS** Defendants' Motion to Dismiss for the reasons that follow:

### FINDING OF FACTS

Plaintiff and her husband Samuel Barnes (collectively "the Debtors") filed a Chapter 13 Bankruptcy petition on October 31, 2007 (BK 07-71949-CMS-13). The Debtors' plan of

reorganization, which provided that all creditors would be paid 100% of their claims, was confirmed January 9, 2008. There was no provision in the confirmed plan committing any proceeds from any cause of action to be used for the payment of creditors. The Debtors did not schedule this cause of action.

Plaintiff filed this adversary proceeding April 22, 2008, against the Defendants and William Anderson[1] "as a class action on behalf of herself and all others similarly situated for redress of their rights pursuant to the Credit Repair Organizations Act, 15 U.S. C. § 1679, et. seq. ("the CROA") and for damages arising out of pendent state law claim. . . ." (Paragraph 1 of AP Doc. 1). Plaintiff brought this action "to stop the Defendants, acting in conspiracy with one another, from operating an illegal debt pooling operation which has caused harm to thousands of consumers in Alabama and across the United States." (Paragraph 3 of AP Doc. 1). Plaintiff alleges in her complaint that: "Defendants . . . promise to help debt-laden consumers, such as Plaintiff, to improve their credit, their credit score, and to get them out of debt, but instead Defendants engage in improper and illegal practices which ultimately result in the consumer being further in debt than he or she was before engaging Defendants' services. Defendants operate in violation of the CROA by failing to make numerous required disclosures to consumers, by failing to comply with provisions regarding the form and terms of its contract, by accepting money for credit repair services before undertaking those services, by making false and misleading representations regarding its services, and by engaging in deceptive and unfair practices." (Paragraph 3 of AP Doc. 1).

Plaintiff's alleged causes of action arise out of an agreement between Debtors and Defendants

---

[1]By agreement, defendant William Anderson was dismissed by order entered June 27, 2008 (AP Doc. 20).

dated September 26, 2005 ("Agreement"). A copy of this agreement is attached as Exhibit A to AP Doc. 10. The Agreement contains a choice-of-law and forum-selection clause which provides: "This Agreement shall be construed under the laws of the State of Florida and venue for its enforcement shall be in a court of proper jurisdiction in the County of Pinellas, Florida."(Paragraph 19 of Exhibit A to AP Doc. 10). This clause forms the basis for the Defendants' Motion. Defendants assert that Plaintiff's causes of action are of the type covered by the forum selection clause, that the forum selection clause is valid and enforceable, and that this court should either dismiss Plaintiff's case or transfer it to the United States District Court for the Middle District of Florida, which is where FGL Clearwater is located. (Certificate of Service on AP Doc. 1).

Plaintiff asserts that the transfer of this case to the Middle District of Florida would impose an unreasonable burden on her and cause serious financial strain because such transfer would involve travel to Florida. In support of this assertion, Plaintiff testified at the hearing. Plaintiff testified that her household consists of 4 people: herself, her husband, her mother, and her mother-in-law. Plaintiff further testified that she provides daily care for her mother-in-law who lives across the street. Her mother-in-law is bedridden and cannot be left alone for more than 3 hours during the day, although she is left alone at night.[2] Plaintiff leaves a monitor by her mother-in-law's bedside so that Plaintiff will know if she needs assistance. Because Plaintiff takes care of her mother-in-law during the day, Plaintiff asserts that she would have to hire a care giver if this case was transferred and that this would impose a financial strain on her and her family.

---

[2]The court would note that a review of the documents in the underlying bankruptcy case shows that, at the time the Debtors filed their bankruptcy petition, Plaintiff worked at South Highlands Baptist Church as an office manager, and had been there for 10 years. (Schedule I of Bk. Doc. 1). In addition, the Trustee entered a Trustee's Direction for Deduction to Plaintiff's workplace on August 26, 2008, after the hearing on Defendant's Motion. (Bk. Doc. 43).

## CONCLUSIONS OF LAW

The Bankruptcy Court has jurisdiction of this case pursuant to 28 U.S.C. § 1334(a). This court has jurisdiction of this issue, a related to bankruptcy proceeding, pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Court for the Northern District of Alabama, signed July 16, 1984, as Amended July 17, 1984.

The outcome of Defendants' Motion depends on the applicability and enforceability of the forum-selection clause contained in the Agreement signed by Plaintiff and her husband. The court will first determine whether the forum-selection clause is applicable in this case. Paragraph 19 of the Agreement provides: "[V]enue for [the Agreement's] enforcement shall be in a court of proper jurisdiction in the County of Pinellas, Florida." Plaintiff filed a complaint on behalf of a nationwide class against Defendants for violations of the CROA and for breach of contract. The claims asserted pursuant to the CROA and pursuant to state contract law are both covered by the Agreement's forum-selection clause. See Sompo Japan Insurance. Inc. v. Alarm Detection Systems, Inc., No. 03 C 2322, 2003 WL 21877615 (N.D. Ill. Aug. 6, 2003) (rejecting argument that plaintiff was not seeking to enforce contract by filing suit for damages because "if there was not a legally enforceable contract, then there could be no cause of action or damages arising from the breach of that contract"); Shulman v. CRS Financial Services, Inc., No. 03 C 1634, 2003 WL 22400211 (N.D. Ill. Oct. 21, 2003) (rejecting argument that forum-selection cause did not apply to plaintiff's CROA claim because she did not file claim for breach of contract).

Because the forum-selection clause is applicable to Plaintiff's case, the court must now determine whether such clause is enforceable. Forum-selection clauses are enforceable in federal

4

courts, and such enforcement is governed by federal law. See P & S Bus. Machs. Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003). Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).[3] The burden is on the party opposing the enforcement of a forum-selection clause to show that the clause is unreasonable. P&S Bus. Machs. Inc., 331 F.3d at 807. Federal courts generally find that forum-selection clauses are unreasonable, and therefore unenforceable, only when: "(1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy." Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1292 (11th Cir. 1998) (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594-95 (1991)). Plaintiff, as the party opposing the motion, must prove that the forum-selection is unreasonable. At the hearing on the Motion and in briefs submitted to the court, the Plaintiff focused on the first two situations listed above by arguing that Paragraph 19 in the Agreement was induced by fraud and that the enforcement of Paragraph 19 would deprive Plaintiff of her day in court because of the inconvenience and financial strain of litigating in Florida. The court will only address the argument as to the inconvenience of Florida as a forum as Plaintiff's allegation of fraud is unsubstantiated. The only evidence submitted by the Plaintiff was testimony asserting that litigating in Florida would impose a substantial financial

---

[3]Although Bremen dealt with a forum-selection clause in an international contract between two sophisticated, business-savvy parties, this language has been applied to forum-selection clauses in form consumer contracts, where consumers have no bargaining power, and their only option is to accept or reject the contract. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594-95 (1991).

5

strain upon Plaintiff and Plaintiff's household. The court would first note that the Plaintiff has a contingency agreement with her attorney in which her attorney has agreed to pre-pay all the litigation expenses. Defendants assert in their brief that, "[t]hus, the transfer of this litigation will cost Barnes nothing-- or virtually nothing. This action has been filed as a putative class action. Virtually all of the travel expenses and discovery expenses would be those of counsel in taking discovery of the defendants. Virtually all of the paper discovery and deposition discovery will be of the defendants- not the plaintiff. Moreover, it is standard practice that deposition of a plaintiff would be in her home city. Thus, the only possible personal expense would be travel for [Plaintiff] herself to actual trial- something that only a fraction of cases ever reach and something that would likely be years away." The court agrees. Because the costs normally associated with litigation would not be born by Plaintiff, the potential financial strain is limited to the expense of hiring a care giver for her mother-in-law if Plaintiff's presence is required at a deposition or for testimony at trial. The court does not believe that these potential costs rise to such a level that enforcing the forum-selection clause is unreasonable. As an initial matter, this court is not convinced that the Plaintiff would, in fact, have to hire a care giver. As noted above, this is a class-action, and it is not likely that Plaintiff's presence would be required for an extended period of time, if at all. There was no evidence that Plaintiff's husband, a co-signer on the Agreement and a co-debtor in the underlying bankruptcy case, could not take of his mother for what this court believes would be a short period of time. However, even if the Plaintiff was required to hire a care giver, that fact does not constitute grounds to find that the forum-selection clause is unreasonable because "[t]he financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause." P&S Bus. Machs. Inc., 331 F.3d at 807. Therefore, this court finds that the forum-selection

6

Case 08-70016-CMS    Doc 27    Filed 11/13/08    Entered 11/13/08 14:55:25    Desc Main
Document    Page 6 of 10

clause contained in the Agreement is not unreasonable. In normal circumstances, a finding that a forum-selection clause is not unreasonable is also a finding that such clause is enforceable. However, because this is a forum-selection clause in a form consumer contract, this court must scrutinize the forum-selection clause for fundamental fairness before finding that it is enforceable. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991). This court finds that there is no evidence that the forum-selection clause contained in paragraph 19 of the Agreement is not fundamentally fair. The court so finds because there is no indication that Defendants chose Florida as the forum in which disputes were to be resolved as a means of discouraging consumers from pursuing legitimate claims. The nature of Defendant's business, credit-repair services, is nation-wide as all consumers located in the United States are potential customers. As such, Defendant is potentially subject to suit in all fifty states. Therefore, it is perfectly natural for Defendant to include a forum-selection clause in all of its contracts in an effort to limit the locations in which suits against it may be filed. Id. at 593. In the absence of specific evidence as to the Defendant's bad faith in including a forum-selection clause and in the absence of any other evidence that would suggest that the forum-selection clause is not fundamentally fair, this court finds that such clause is fundamentally fair. Therefore, because the forum-selection clause is not unreasonable and is fundamentally fair, this court finds that the forum-selection clause contained in paragraph 19 of the Agreement is enforceable. See Vertucci v. Orvis, No. 3:05CV1307, 2006 WL 1688078, at *8 (D. Conn. May 30, 2006).

The Plaintiff's final argument as to why venue is proper in this court is based upon the non-waiver provision contained in the CROA. Such non-waiver provision provides:

> Consumer waivers invalid. Any waiver by any consumer of any protection provided by or any right of the consumer under this title-
>     (1) shall be treated as void; and

(2) may not be enforced by any Federal or State court or any other person.

15 U.S.C. § 1679f(a). There are only four rights expressly identified within the CROA Act and those rights are listed in § 1679c, entitled "Disclosures." Those rights are: (1) The right to dispute inaccurate information in a credit report by contacting the credit bureau directly; (2) The right to obtain a copy of the consumer's credit report from a credit bureau; (3) The right to sue a credit repair organization that violates the CROA; and (4) The right to cancel a contract with any credit repair organization for any reason within 3 business days from the date signed. 15 U.S.C. § 1679c. At issue in this case is whether the forum-selection clause contained in the Agreement acts as a waiver of the Plaintiff's right to sue that is provided for in the CROA. The cases cited by Plaintiff do not deal with this particular issue, as they all relate to whether an agreement to arbitrate acts as a waiver of a consumer's right to sue under the CROA, and this court was not able to find any such cases through its own research. However, the analysis set forth by the courts finding that an arbitration clause does constitute a waiver of a consumer's right to sue is enlightening. These courts rely on the distinction between the act of arbitration and the act of suing in a court of law.

> To sue is "[t]o institute a lawsuit against (another party)." BLACK'S LAW DICTIONARY 1473 *Bryan A. Garner ed. 8th ed., 2004). For "lawsuit," Black's directs us to "suit," *id.* at 905, which is defined: "[a]ny proceeding by a party or parties against another *in a court of law.*" *Id.* at 1475 (emphasis added). "Suit" is "[a]lso termed *lawsuit; suit at law* ..., [a] lawsuit itself...."*Id.* at 952.
>
> By contrast "arbitration" is "[a] method of dispute resolution involving one or more neutral third parties who are usu[ally] agreed to by the disputing parties and whose decision is binding...." *Id.* at 112..... Arbitration is one of several mechanisms of "alternative dispute resolution," which is "[a] procedure for settling a dispute *by means other than litigation*, such as arbitration or mediation." *Id.* at 86 (emphasis added)
>
> Corpus Juris Secundum emphasizes that "[a]rbitration is not a judicial proceeding either at common law or under statutes. It is a proceeding separate from litigation based upon its underlying purpose of encouraging dispute resolution *without resort to the courts*, and may

be characterized as an alternative to litigation." 6 C.J.S. Arbitration § 2 (June 2005) (emphasis added) (citations omitted).

Alexander v. U.S. Credit Mgmt, Inc., 384 F. Supp. 2d 1003, 1011 (N.D. Tex. 2005). In essence, the argument is that a right to sue necessarily involves the right to bring an action in a court of law, and that such right is something that arbitration cannot provide by its very nature. See Reynolds v. Credit Solutions, Inc., 541 F. Supp. 2d 1248, 1260-61 (N.D. Ala. 2008) ("By agreeing to settle all disputes in an arbitral forum, a consumer is necessarily giving up his or her right to sue, because arbitration is an alternative to litigation in a judicial forum-hence the term 'alternative dispute resolution.'"). This court does not believe that the same can be said for a forum-selection clause. A forum-selection clause does not deny a plaintiff the right to file a cause of action in a court of law; instead such clause merely limits the location at which a plaintiff may bring the cause of action. As such, a forum-selection clause does not act as a waiver of a plaintiff's right to sue under the CROA. Therefore, this court finds that the forum-selection clause contained in the Agreement does not act as a waiver of the Plaintiff's right to sue and that the CROA does not invalidate such clause.[4]

---

[4]The court would note that Congress knew how to limit venue in consumer protection statutes should it so desire. The Federal Fair Debt Collection Practices Act of 1978, enacted prior to the CROA, contains the following provision:

> (a) Venue. Any debt collector who brings any legal action on a debt against any consumer–
> (1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or
> (2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity–
> (A) in which such consumer signed the contract sued upon; or
> (B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1692i. This provision has the effect of invalidating any forum-selection clause that the parties to a debt contract might agree to. Because the CROA does not have a similar

9

Because the forum-selection clause contained in paragraph 19 of the Agreement is applicable to the causes of action filed by the Plaintiff, such clause is enforceable pursuant to federal law, and such clause is not invalidated pursuant to the CROA, the Defendants' Motion is due to be granted. Defendant requested dismissal of Plaintiff's case or, in the alternative, transfer to the District Court of the Middle District of Florida. Paragraph 19 of the Agreement provides that venue shall be "in a court of proper jurisdiction in the County of Pinellas, Florida." There is no district court located in Pinellas County, Florida. "A forum selection clause that specifies venue in a county that has no federal court cannot reasonably be interpreted to permit suit in a federal court located in a different county." Sompo Japan Ins., Inc., 2003 WL 21877615, at *2. See also Infinite Tech., Inc. v. Rockwell Elec. Commerce Corp., No. 01 C 1025, 2001 WL 527357, at *2 (N.D. Ill. May 16, 2001) (finding that the contract requiring suit to be brought in "courts of DuPage County, State of Illinois" could not be interpreted to include federal court located in Cook County, Illinois). Therefore, the Plaintiff's case is hereby dismissed without prejudice to the Plaintiff filing her case in a court of proper jurisdiction in the County of Pinellas, Florida.

The court therefore finds that the Defendants' Motion to Dismiss is due to be **GRANTED.**

An order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this November 13, 2008.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge

---

provision, it follows that Congress did not intend to limit the proper forums, or venues, of causes of action brought pursuant to the CROA.